

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JMH:EL
F. #2023R00736

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 5, 2023

By Email and ECF
The Honorable Marcia Henry
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

    Re:  United States v. Daniel Galanter
        Magistrate Docket No. 23-870 (MMH)

Dear Judge Henry:

  Later today, the defendant Daniel Galanter will appear before Your Honor for arraignment on the above-referenced Complaint ("the Complaint"). The defendant is charged with one count of Receiving Child Pornography, in violation of 18 U.S.C. § 2252(a)(2). The United States respectfully moves for a detention hearing pursuant to 18 U.S.C. § 3142(f)(1)(E), and submits that the defendant should be detained because he is a danger to the community and a flight risk, and no combination of conditions can mitigate these risks.

I.  The Offense Conduct

  Between September 2018 and May 2022, the defendant routinely communicated via Skype, using Skype username "Daniel Galanter," with an individual ("Individual-1") engaged in the sale of online child pornography, specifically livestream webcam shows involving the sexual abuse and exploitation of children in that individual's care.

  During this time, to the defendant routinely discussed, arranged, and negotiated the sale and exchange of images, videos, and live streams depicting a minor engaging in sexually explicit conduct. The defendant would often seek out and receive custom-made exploitative materials, instructing Individual-1 via Skype on what sexual abuse Individual-1 should inflict upon victims, which abuse was livestreamed to the defendant over Skype in exchange for payment. For example:

- In September 2020, Galanter and Individual had a Skype video call during which Galanter sent a message to Individual-1 stating "Ok 15 for send first or 25 show me your daughter's asshole first." During this conversation, the defendant sent a screenshot of the video call to Individual-1, which screenshot captured Galanter's face.

- In October 2020, Galanter and Individual-1 had a Skype video call during which Galanter messaged Individual-1, providing a Western Union transaction number, and stating "I can't see it's too dark."[1] Galanter then offered additional funds and requested "I want finger and tongue fucking her ass and pussy deeeeep" and "I want to see you lick her pussy and ass HARD and DEEP." Galanter later requested that Individual-1 "[s]hit in daughter mouth."

- In August 2020, Galanter sent a message to Individual-1 via Skype, stating "Bb I tell u I want show with [lollipop emoji] inside pussy and ass." Individual-1 then sent a video to the defendant, which video depicted Individual-1 using her hands to spread the anus and vagina of a young child. Individual-1 then used a vibrating device against the victim's anus and inserted a dildo into the victim's anus. In response to the video, Galanter replied "Bb I told u I want show not vid" and further stated that he would only pay Individual-1 for a live show of his requested sex acts.

- In October 2022, Individual-1 sent two videos to Galanter that depicted minors engaging in sexually explicit conduct. The first video was approximately six minutes long and depicted a minor female spreading her vagina, while laying on a bed. The minor female then removed her clothing and bent over to expose her anus. Subsequently, an unidentified adult female laid down next to the minor female and instructed her on how to spread her vagina. The second video was approximately three minutes long and depicted two minor females laying nude on a bed and exposing their vaginas and anuses. The victims appear to be between approximately seven and eleven years old.

Between September 2018 and May 2022, Galanter and Individual-1 exchanged over 3,500 messages and calls over Skype.

II.     The Defendant Is a Serial Predator

The defendant is a registered sex offender. In September 2015, the defendant plead guilty to Attempted Aggravated Sexual Abuse by Compulsion in the Second Degree, in violation of NY Penal Law Section 130.67. There, the defendant sexually assaulted a 22-year-old female on the subway. The defendant was sentenced in May 2017 to two years' imprisonment and ten years of supervised release. He was released from prison in June 2018, only three months before he began communicating with Individual-1.

Because of the defendant's prior offense, he faces a mandatory minimum sentence of 15 years' imprisonment if convicted of the offense charged in the Complaint, and a maximum sentence of 40 years' imprisonment. The government has not conducted a complete evaluation of the defendant's offense conduct for purposes of the United States Sentencing Guidelines ("the

---

[1] Western Union records reflect that this transaction was linked to a bank account registered in the defendant's name.

Guidelines"), but a preliminary evaluation of the Guidelines suggests that the applicable Guidelines as to the defendant would be at or above the mandatory minimum sentence of 180 months, and possibly well above that level.

III.    Legal Standard

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence, United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995), and risk of flight must be proven by a preponderance of the evidence, United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

Where, as here, a defendant is charged under § 2252(a), there is a presumption "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." 18 U.S.C. § 3142(e)(3)(E); see also United States v. Schulte, 2020 WL 1316210, at *2 (2d Cir. May 3, 2022) (discussing the presumption of detention in cases involving minor victims). The burden is on the defendant to present evidence that he is not a danger to the community or risk of flight. United States v. Valerio, 9 F. Supp. 3d 283, 287 (E.D.N.Y. 2014) (citing United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)). "Once a defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." United States v. Kelly, 2020 WL 2528922, at *1 (E.D.N.Y. May, 15, 2020) (citing Mercedes, 254 F.3d at 436).

To determine whether the presumptions of dangerousness and flight are rebutted by a defendant, a court must consider four factors identified by the Bail Reform Act: (1) the nature and circumstances of the crimes charged, including whether the offense involves a controlled substance or a firearm; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (internal quotation marks omitted).

The possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee."); United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (explaining that the lengthy maximum combined term of imprisonment faced by the defendant "created potent incentives to flee"); United States v. Dodge, 846 F. Supp. 181, 184–85 (D. Conn. 1994) (explaining that the possibility of a "severe sentence" heightens the risk of flight); accord United States v. Cisneros, 328 F.3d 610, 618 (l0th Cir. 2003) (finding that the defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend,

897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130–31 (2d Cir. 2000). In the pre-trial context, few detention hearings involve live testimony or cross-examination; rather, most proceed on proffer. LaFontaine, 210 F.3d at 131. This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." Id. (internal quotation marks omitted); see also United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) ("[The defendant] has twice been convicted of weapon possession—one felony conviction, and one misdemeanor conviction. We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

IV. Argument

The statutory presumption found in 18 U.S.C. § 3142(e)(3)(E) is entirely appropriate here given the serious, predatory nature of the defendant's conduct, the strength of the evidence of his criminal conduct, and the high penalties he faces. The § 3142(g) factors thus counsel heavily in favor of the defendant's detention.

    A.    The Defendant Is a Clear and Present Danger to the Community[2]

The defendant preyed upon numerous children who, at the defendant's command, were subjected to abhorrent sexual abuse. Notably, the defendant was released from prison for his attempted sexual assault in June 2018 and within *three months* he began communicating with Individual-1 to pay for Individual-1 to perform sex acts on helpless children for his sexual satisfaction and gratification. The defendant specifically took pleasure in instructing Individual-1 on how to abuse the child victims. As noted above, when a video depicting sex acts on a young girl was sent to Galanter (at his request) in August 2020, Galanter rebuffed the material and insisted that the acts be performed via a "show," or else he wouldn't pay. The defendant's exploitation of Individual-1's victims persisted for at least three and a half years.

There can be no question that this conduct is among the most serious of offenses and requires special consideration. The transmission and possession—and, here, the bespoke creation—of child sexual abuse material is "an insidious offense since it takes advantage of a particularly vulnerable segment of society, children." Valerio, 9 F. Supp. at 289 (quoting United

---

[2] As noted above, there is a rebuttable presumption that no condition or combination of conditions can reasonably assure the safety of the community because this Court has concluded that there is probable cause to believe that the defendant committed the offense charged. See 18 U.S.C. § 3142(e); cf. Complaint.

4

States v. Schenberger, 498 F. Supp. 2d 738, 742 (D.N.J. 2007)).  Such offenses are "serious crime[s] that threaten[] real, and frequently violent, harm to vulnerable victims." United States v. Reingold, 732 F.3d 204, 217 (2d Cir. 2013); see also United States v. Blackman, 2020 WL 843735, at *4–5 (E.D.NY. Mar. 22, 2022) (discussing the dangers posed by child pornography).  The defendant's conduct has brought unimaginable and lifelong harm to the numerous helpless victims who were exploited by the defendant for his sexual enjoyment.

Given the defendant's conduct, even the most stringent of release conditions cannot guard against the danger his conduct poses to the most vulnerable members of our community.  See Kelly, 2020 WL 2528922, at *3 (discussing how modern technology presents the risk that monitoring and protective measures may be circumvented (citing United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993)).

B.   The Defendant Is an Intolerable Flight Risk[3]

1.  The Evidence of the Defendant's Guilt Is Overwhelming

The evidence obtained by the government to date is overwhelming and compelling.  The Skype username used by the defendant to communicate with Individual-1 via Skype is "Daniel Galanter," the defendant's own name.  Communications sent by the Skype account further confirm that the defendant was the individual using the account.  First, in a September 2020 conversation, the defendant sent a screenshot image to Individual-1 that included his own face, and which the defendant's New York State probation officer confirmed to be the defendant.  One or more of the payments issued by the defendant for the exploitation he demanded originated from a bank account owned by the defendant.  Finally, as described above, the contents of the messages and images exchanged between Individual-1 and the defendant clearly demonstrate that the defendant received child pornography from Individual-1 and often instructed Individual-1 to engage in sex acts with minors in exchange for payment.

The strength of this evidence compels detention.

2.  The Defendant Faces a Significant Sentence

The crime charged in this case carries a substantial prison sentence.  As a result of the defendant's prior conviction for attempted sexual abuse, if convicted, he will face a statutory mandatory minimum of 15 years' imprisonment and a statutory maximum of 40 years' imprisonment.  See 18 U.S.C. § 2252(b)(1).  The defendant's sentencing exposure creates a risk of flight that weighs heavily against pretrial release.  See United States v. English, 629 F.3d 311, 317 (2d Cir. 2011) (affirming the district court's denial of pretrial release based in part on the fact the defendant faced a 20-year mandatory minimum sentence; see also United States v. Blanco, 570 F. App'x 76, 77 (2d Cir. 2014) (summary order) (noting that a mandatory minimum

---

[3]   As noted above, a rebuttable presumption exists that no condition or combination of conditions can reasonably assure the appearance of the defendant as required where, as here, the Court has concluded that there is probable cause to believe that the defendant committed the offense charged.  See 18 U.S.C. § 3142(e); cf. Complaint.

5

sentence is among the factors properly considered during a detention determination); United States v. Jackson, 823 F.2d 4, 7 (2d Cir. 1987) (finding that the possibility of a severe sentence is an important factor in assessing flight risk).

        3.      The Defendant's Characteristics Reflect That He Has Not Been Able to Abide by Supervisory Conditions In the Past

As discussed, the defendant is a sex offender who, within months of his release from prison for attempted sexual abuse, began to engage in the conduct charged here. The defendant did so while subject to supervision from New York State Probation, during which he was subjected to routine home visits and inspection of his cellular device, among other supervisory measures—measures that did not prevent the appalling conduct charged here. Having already violated the law, the defendant's behavior—as charged—reflects that prior terms of detention and supervision have failed to deter him from continued depredations targeting the most vulnerable members of our society, children. The defendant's repeated engagement in sexually abusive conduct therefore overwhelmingly weighs in favor of detention to protect the community.

V.      Conclusion

The defendant purchased the sexual abuse of numerous children for his own sexual pleasure. The safety of the community and the defendant's substantial risk of flight require that he be detained pending trial.

                                                              Respectfully submitted,

                                                              BREON PEACE
                                                              United States Attorney

                                       By:     */s/ Elias Laris*
                                                      Elias Laris
                                                      Assistant U.S. Attorney
                                                      (718) 254-6599

cc:      Clerk of Court (By Email)
          Defense Counsel of Record (By Email)